**FILED**

**October 26, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 7:15 AM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Mario Mace, | ) | Docket No.: 2015-06-0059 |
| Employee, | ) | |
| v. | ) | State File Number: 88006-2014 |
| Express Services, Inc. | ) | |
| Employer, | ) | Chief Judge Kenneth M. Switzer |
| And | ) | |
| Sedgwick, | ) | |
| Insurance Carrier. | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER DENYING TEMPORARY DISABILITY BENEFITS

---

This matter came before the undersigned workers' compensation judge on the Request for Expedited Hearing filed by the employee, Mario Mace, pursuant to Tennessee Code Annotated section 50-6-239 (2014). The present focus of this case is Mr. Mace's entitlement to temporary partial disability benefits. The central legal issues are whether the employer, Express Services, Inc., accommodated Mr. Mace's light-duty restrictions and the propriety of his discharge from employment. For the reasons set forth below, the Court finds that Express accommodated Mr. Mace's restrictions and that his discharge was reasonable. Therefore, the Court denies his request for temporary disability benefits at this time.[1]

### History of Claim

Mr. Mace is a forty-five-year-old resident of Humphreys County, Tennessee. (T.R. 1 at 1.) He sustained injuries to his left shoulder on November 4, 2014, while under Express' employ. Dr. Damon Petty, an authorized provider, placed Mr. Mace on restrictions of "no use of left arm at work" on November 10, 2014. (Ex 1 at 1.) The restriction remained in place until July 7, 2015, when Dr. Petty performed surgery. *Id.* at 3. He excused Mr. Mace from work from July 10-21, 2015. *Id.* Express paid temporary total disability benefits for that time. On July 22, 2015, Dr. Petty returned Mr. Mace to

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

the previous light-duty restrictions. *Id.* at 5. Mr. Mace testified the restrictions remain in place.

After Dr. Petty assigned the November 10, 2014 restrictions, Mr. Mace testified that Express required him, and anywhere from one to three other injured employees, to perform clerical tasks, mostly in the kitchen. The duties included paper-clipping documents, compiling employment packets and emptying trashcans. (Ex. 2 at 2.) Mr. Mace said these tasks required him to use his left arm. In particular, when assembling the packets and paper-clipping documents, he had to shuffle papers to line them up together. Compiling the packets and paper-clipping hurt sometimes, he said. He was unable to open the replacement trash bags or tie the bags without using both hands. His supervisor, Pam Kuhns, testified that she assisted with tying the trash bags. Ms. Kuhns testified that Express' policy is to accommodate injured workers' restrictions, so that they can continue earning a paycheck.

Mr. Mace stated on cross-examination that he told Ms. Kuhns on one occasion that the clerical tasks caused him pain, but he did not ask for different work "because of the reply I got." Mr. Mace did not say when or where this conversation took place, nor did he elaborate regarding Ms. Kuhns' response. Ms. Kuhns stated that Mr. Mace never complained about the clerical work, but rather complained he was in pain and Dr. Petty had not prescribed pain medication. Had Mr. Mace complained about clerical work, she would have looked for other work for him. According to Ms. Kuhns, she told Mr. Mace he should never use his left arm. Mr. Mace agreed he never asked Dr. Petty to revise his restrictions.

Mr. Mace testified that, in early February, Express required him to remove trash from the parking lot outside its premises and the entire Dickson Square Properties parking lot, using a bucket and trash pincher. He drew the perimeter of the area he cleaned on a Google Maps aerial photo. (Ex. 9.) He testified he cleaned the parking area six or seven times, without assistance, until Express discharged him. To accomplish the task, he put the refuse either in a bucket, a receptacle in front of a store, or a box that he moved with his feet. He left the boxes for someone else to pick up. Ms. Kuhns testified that she retrieved the boxes with her car. She denied that she asked him to clean the parking lot "to humiliate him," and maintained that she occasionally picks up trash from the parking lot. Ms. Kuhns stated Mr. Mace "said he was tired of doing paperwork, and he would – he liked to be outside because he would go out and smoke frequently. He said he liked to go outside. That is one of the reasons I let him do that." Mr. Mace acknowledged on cross-examination that he told Ms. Kuhns he was tired of sitting in the kitchen for eight hours per day, and asked to do other work.

Mr. Mace testified he began wearing sleeveless shirts in November 2014 because it hurt to put his left arm in sleeves. On February 5, 2015, Brett Hill, owner of the Express Franchise in Dickson where Mr. Mace worked, gave a verbal warning regarding

2

a dress-code violation for the sleeveless shirts, but simultaneously approved Mr. Mace wearing the sleeveless shirts, as long as he covered his arms with a jacket in areas where clients and prospective employees frequent. Ms. Kuhns testified that Express has a written dress code for its office workers, but conceded that Express never provided Mr. Mace with a copy of the policy, nor did it apply to him.[2]

On March 16, 2015, Mr. Mace cleaned the parking lot without wearing a jacket because it was a warm day. Afterward, he reentered Express's reception area without a jacket. Mrs. Kuhns wrote him up for violating the office dress code. (Ex. 6.) Afterward, according to Mr. Mace, he "muttered" as he walked out through the reception area, "This is unf---ing believable." (Ex. 2 at 3.) Express offered the testimony and Affidavit (Ex. 3) of Denny Molsberry, a staffing consultant in the Dickson office. Ms. Molsberry testified that, while working in Express' reception area that day, she overheard Mr. Mace say, "This is unf---ing believable" as he walked through the lobby. Ms. Molsberry said she believes two prospective Express employees in the room heard the statement as well.[3] Mr. Mace denied the presence of anyone other than either Ms. Molsberry or Ms. Kuhns in the area where he spoke the f-word.

Mr. Mace testified that, the next day, upon arriving at work, he spoke to Ms. Kuhns briefly, requesting copies of the written warning and dress code, which she did not provide at that time. After cleaning the parking lot for approximately one and one-half or two hours, Ms. Kuhns summoned Mr. Mace to her office. She proceeded to terminate him, saying that someone overheard him use inappropriate language the previous day. She gave him no documentation regarding the discharge. On cross-examination, Mr. Mace conceded using the f-word in his employer's reception area is unprofessional and the word he used is "obscene." Ms. Kuhns acknowledged she was not present when Mr. Mace said the word in question.[4] She said Express has a "good reputation in the community." In her opinion, saying the f-word in the workplace is unprofessional, and she considered his use of it insubordination. Ms. Kuhns stated, "He was dismissed for his misconduct for what he said in the lobby, with people out in the lobby there." Mr. Mace conceded in cross-examination that his use of profanity in the workplace was Ms. Kuhns' reason for discharging him. Had Mr. Mace not been terminated, Ms. Kuhns said clerical work within his restrictions would still be available.

---

[2] Both parties offered extensive testimony regarding Mr. Mace's post-injury work attire. However, in its brief and closing argument, Express stated that the use of profane language, rather than a dress-code violation, motivated the termination. Therefore, the Court places weight upon this testimony only to the extent that it describes the incidents leading to Mr. Mace's frustration on March 16, 2015, when he used the f-word at the workplace, and not as a reason for his discharge.

[3] The Court notes that Ms. Molsberry's testimony and Affidavit differ substantially regarding her recollection of Mr. Mace using the f-word, particularly, where he was and whether he was walking or standing still when he uttered the words. While this casts doubt to some degree on her credibility, Mr. Mace does not dispute that he made the statement.

[4] Neither counsel elicited the circumstances or timeframe of Ms. Kuhns learning that Mr. Mace used the f-word in Ms. Molsberry's presence.

Mr. Mace filed a Petition for Benefit Determination (T.R. 2) seeking temporary disability benefits from March 18, 2015, until July 9, 2015, and then resuming on July 22, 2015, through the present.[5] The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. (T.R. 3.) Mr. Mace filed a Request for Expedited Hearing (T.R. 4), and this Court heard the matter on October 20, 2015.

At the Expedited Hearing, Mr. Mace asserted Express failed to accommodate his light-duty restrictions because it required him to perform tasks involving the use of the left arm. Express caused Mr. Mace's frustration with this failure and the unwarranted dress-code write-up. The termination was improper because Mr. Mace's conduct and words do not fall within the misconduct standard described in *Ruff v. Neeley*, No. W2006-01192-COA-R3-CV, 2006 Tenn. App. LEXIS 805 (Tenn. Ct. App. Dec. 20, 2006).

Express countered that all of the light-duty tasks it assigned fell within Dr. Petty's restrictions. Dr. Petty restricted Mr. Mace from using his left arm but not his left hand. Mr. Mace never complained that the assigned tasks caused him pain, nor did he seek different restrictions from Dr. Petty. Mr. Mace's use of the word "unf---ing" demonstrated "insubordination," "unprofessional conduct," and "lewd behavior" prohibited by its employee handbook. (Ex. 4 at 3.) Mr. Mace understood the rule and consequences for its violation, as evidenced by his signature on the "handbook receipt." (Ex. 5.) But for the discharge, Express could still be accommodating Mr. Mace's restrictions.

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987);[6] *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn.

---

[5] The parties stipulated that Mr. Mace's compensation rate is $220.34, or $31.48 per day. (Ex. 8.) Through the date of the Expedited Hearing, Mr. Mace missed 205 days, so that he requested $6,443.40 in past-due temporary partial disability benefits.

[6] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

4

Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

Tennessee law provides that an employer must pay temporary disability benefits until the employee reaches maximum medical improvement so long as the employee can prove an inability to work due to a compensable injury. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978); *see also Gray v. Cullom Machine Tool and Die, Inc.*, 152 S.W.3d 439 (Tenn. 2004); *Gluck Brothers, Inc. v. Coffey*, 431 S.W.2d 756 (Tenn. 1968). An employee is entitled to receive temporary partial disability benefits, pursuant to Tennessee Code Annotated section 50-6-207(2) (2014), when "the temporary disability is not total." *Stem v. Thompson Servs.*, No. M2010-01566-WC-R3-WC, 2011 Tenn. LEXIS 742, at *27 (Tenn. Workers' Comp. Panel July 26, 2011); *Jewell v. Cobble Construction and Arcus Restoration*, No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *22 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015).

An injured employee is not entitled to temporary disability benefits if terminated for cause *and* the employer was reasonably capable of providing modified duty within the restrictions assigned. To be excused from this obligation, the employer must demonstrate that the termination of employment involved a breach of the reasonable expectations of the employer and appears reasonably appropriate. In such cases, the employer is deemed to have made reasonable efforts to accommodate the employee's work restrictions and the Employee's work injury is not the reason why he is not returned to his former job. *See generally Carter v. First Source Furniture Group*, 92 S.W.3d 367, 371-372 (Tenn. 2002) (holding that, "an employer should be permitted to enforce workplace rules without being penalized in a workers' compensation case." *Id.* at 368).

In order to decide the issue, the Court must determine: "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that those actions were, as a factual matter, the true motivation for the dismissal." *Ingram v. Heads Up Cutting Ctr.*, No. M2012-00464-WC-R3-WC, 2013 Tenn. LEXIS 338, at *20 (Tenn. Workers' Comp. Panel Apr. 10, 2013); *see also Durham v. Cracker Barrel Old Country Store, Inc.*, No. E2008-00708-WC-R3-WC, 2009 LEXIS 3, at *9 (Tenn. Workers' Comp. Panel Jan. 5, 2009).

The Court first considers whether Express was reasonably capable of providing modified duty within the restrictions assigned and whether it complied with those

5

restrictions. The Court rejects Express' assertion that Dr. Petty restricted Mr. Mace from using his left arm but not his left hand. Common sense dictates that the hand is part of the arm, and the broader restriction of "no use of left arm" encompassed the more specific prohibition against using the left hand in any significant way. The Court further observes that moving the left hand to a certain position, e.g. placing it on a table, requires movement of the shoulder, as demonstrated by Mr. Mace during the hearing.

The uncontroverted testimony from Ms. Kuhns was that Express' policy was to provide light-duty within workers' restrictions whenever possible so that they could continue to earn a paycheck. Mr. Mace testified he performed the clerical tasks contemporaneously with other injured persons. He asserted that the clerical/cleaning tasks caused him pain, but also conceded that he only brought this to Ms. Kuhns' attention once. He offered no specifics regarding that conversation.

While it is certainly more difficult to perform the tasks Mr. Mace described one-handed, it is not impossible. Mr. Mace exercised a degree of choice to use his left arm/hand at work. Under the circumstances, Express acted reasonably when it offered Mr. Mace the clerical/cleaning work in an attempt to accommodate his restrictions. Express had no basis to believe the tasks fell outside of his restrictions, given that he performed the tasks for several months, and given Ms. Kuhns' plausible explanation that Mr. Mace complained about pain from a lack of medication rather than the assigned tasks. Express proved that these same modified duties remain available.

Next, the Court considers whether the actions precipitating Mr. Mace's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations.[7] Mr. Mace admitted using the f-word in Express' reception area, which he conceded is "obscene." The established rules, as outlined in the employee handbook, do not specifically prohibit the use of foul language. Nonetheless, this Court has no difficulty finding that ordinary workplace rules and/or expectations preclude the use of "obscene" language in the workplace and especially in an area open to the public.

Thus the final inquiry is whether Mr. Mace's actions were, as a factual matter, the true motivation for his dismissal. Mr. Mace argued in his brief that Express required him to clean the parking lot "to humiliate and wear Mr. Mace down to the point where he would voluntarily quit his job." The evidence did not bear that out. Mr. Mace did not introduce evidence of a motive other than his use of profanity. Specifically, he offered no proof that Express harbored ill will about his workplace injury, nor did he produce written documentation indicating any other reason for the termination. Ms. Kuhns testified that Mr. Mace's use of profanity prompted the termination. This Court cannot infer any other motivation based on the evidence before it at this time.

---

[7] The Court declines to analyze Mr. Mace's conduct using the standard outlined in *Ruff v. Neeley, supra,* as his counsel suggested, as that case involved misconduct in the context of an unemployment insurance hearing and therefore bears little or no precedential value upon this Court.

Therefore, as a matter of law, Mr. Mace has not come forward with sufficient evidence at this time from which this Court can conclude that he is likely to prevail at a hearing on the merits regarding his entitlement to temporary partial disability benefits.

**IT IS, THEREFORE, ORDERED AS FOLLOWS:**

1. Mr. Mace's request for temporary disability benefits is denied.

2. This matter is set for an Initial (Scheduling) Hearing on January 6, 2016, at 10:15 a.m. Central time.

   **ENTERED this the 26th day of October, 2015.**

   **Chief Judge Kenneth M. Switzer**
   **Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

**Exhibits:**

Ex. 1: Medical Records of Mario Mace-Restrictions
Ex. 2: Affidavit of Mario Mace
Ex. 3: Affidavit of Denny Molsberry
Ex. 4: Express Employee Handbook (photocopy)
Ex. 5: Employee Handbook signed receipt
Ex. 6: Express Employee Warning Report
Ex. 7: Deposition of Ashley Warcewicz
Ex. 8: Form C-41, Wage Statement
Ex. 9: Google Maps aerial view of Express Services and adjacent businesses in Dickson, Tennessee
Ex. 10: Employee position statement, July 14, 2015
Ex. 11: TOA "WorkLink Physician's Report," January 12, 2015
Ex. 12: TOA "WorkLink Physician's Report," July 22, 2015
Ex. 13: Express Employee Handbook (original)

**Technical record:**[i]

1. Employee position statement, August 5, 2015
2. Petition for Benefit Determination, August 18, 2015
3. Dispute Certification Notice, September 14, 2015
4. Request for Expedited Hearing, September 15, 2015
5. Employee Mario Mace's Memorandum in Support of TTD, September 15, 2015
6. Employer's Brief in Opposition to Employee's Petition for Temporary Total Disability Benefits, September 22, 2015

---

[i] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Temporary Partial Disability Benefits was sent to the following recipients by the following methods of service on this the 26th day of October, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------------|---------|-----------|------------------|
| William Hicky, Employee's Counsel | | | X | will@hickylaw.com |
| Gregory Fuller, Employer's Counsel | | | X | ghfuller@mijs.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**